**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2551-WJM-CBS

DIRECTV, LLC, a California limited liability company,

    Plaintiff,

v.

JESSICA MARIE TAYLOR, Individually and as officer, director, shareholder, principal, manager and or member of Taylormade Foods LLC, d/b/a THE DAWG HOUSE SALOON, and
TAYLORMADE FOODS LLC, d/b/a THE DAWG HOUSE SALOON,

    Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

Plaintiff DIRECTV, LLC brings claims against Defendants Jessica Marie Taylor ("Taylor"), and TAYLORMADE FOODS LLC, d/b/a THE DAWG HOUSE SALOON ("Dawg House") (collectively "Defendants") for violations the Federal Communications Act ("FCA"), 47 U.S.C. § 605.  (ECF No. 1.)  Before the Court is Plaintiff's Motion for Default Judgment (the "Motion").  (ECF No. 17.)  For the reasons set forth below, Plaintiff's Motion is granted.

### I. BACKGROUND

Plaintiff initiated this action on September 18, 2013, alleging that the Defendants willfully violated the FCA by showing week 6 of NFL Sunday Ticket on October 16, 2011 (the "Broadcast") for direct commercial gain and without appropriate authorization from Plaintiff.  (Compl. (ECF No. 1) ¶ 21.)  Plaintiff brings three claims: (1) violation of  47

U.S.C. § 605; (2) violation of 18 U.S.C. § 2511; and (3) conversion.[1]  (*Id.* ¶¶ 25-45.) Plaintiff requests statutory damages, including enhanced damages for willful violations, and injunctive relief.

On October 19, 2011, both Defendants were served with, among other things, a Summons and a copy of the Complaint.  (ECF Nos. 7, 8.)  After Defendants failed to answer or otherwise defend against this action, upon Plaintiff's Motion, the Clerk entered default against both Defendants.  (ECF No. 15.)  Plaintiff filed its Motion for Entry of Default Judgment on December 20, 2013.  (ECF No. 17.)

The Court has reviewed the Motion, the exhibits and affidavits, and the applicable law, and is sufficiently advised on the issues involved.

## II.  LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit.  Fed. R. Civ. P. 55(a).  Pursuant to Rule 55(b)(1), default judgment must be entered by the clerk of court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2). "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection."  *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991) (internal

---

[1]  Plaintiff only moves for default of its claim under 47 U.S.C. § 605.  (ECF No. 17.) Because this is a dispositive motion, he Court finds that Plaintiff has abandoned its claims for violation of 18 U.S.C. § 2511, conversion, and request for injunctive relief by failing to move for relief on these claims.

quotation marks and citation omitted).  Further, "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (internal citation omitted).

Before granting a motion for default judgment, the Court must take several steps. First, the Court must ensure that it has personal jurisdiction over the defaulting Defendants and subject matter over the action. *See Williams v. Life Sav. & Loan*, 802 F .2d 1200, 1202-03 (10th Cir. 1986).  Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by Defendants upon default—support a judgment on the claims against the defaulting Defendants. *See Federal Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, *3 (D. Colo. March 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.") (citations omitted).  "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).  Once the Court is satisfied that default judgment should be entered, it has the discretion to hold a hearing to determine the amount of damages.  *See* Fed. R. Civ. Pro. 55(b)(2).  Generally, a damages hearing is not needed when the damages requested are for a sum certain. *See United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006).

### III. ANALYSIS

A.     **Jurisdiction**

The Court finds that jurisdiction exists in this case pursuant to 28 U.S.C. § 1331 (federal action) because the lawsuit was brought pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. § 521, *et. seq.* Moreover, the Court has personal jurisdiction over the parties as Defendant Taylor's residence and the Dawg House are both located in Colorado, all Defendants were properly served with copies of the summons and complaint in this action, and the alleged statutory violation took place in Colorado. (Compl. (ECF No. 1) ¶¶ 2-16.) Accordingly, the Court finds that it has personal jurisdiction over both Defendants, and jurisdiction over this case.

B.     **Plaintiff's Statutory Claims**

Plaintiff alleges that Defendants violated the FCA by showing week six of NFL Sunday Ticket of the 2011 NFL season on October 16, 2011. (ECF No. 17-3 at 2.) The FCA provides, in relevant part that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a)(6).

Plaintiff has alleged, through well-pleaded facts, that Defendants were not authorized to exhibit the Broadcast at Dawg House, but Defendants did so nonetheless. (Compl. ¶¶ 20-22.) Other Courts dealing with similar situations have agreed that the

authorization could only be accomplished through one of "several illegal means."  See *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1183 (D. Colo. 2008); *J & J Sports Prods., Inc. v. Twiss*, 2012 WL 1059990, at *3 (D. Colo. Mar. 2, 2012).  Accordingly, Plaintiff has met the statutory requirements for liability under section 605.  See *Gutierrez*, 544 F.Supp.2d at 1183.

Plaintiff also names Taylor as a Defendant in her individual capacity.  (Compl. ¶ 1.)  In order to establish vicarious liability of an individual for a violation of 47 U.S.C. § 605, the plaintiff need only show that the individual defendant had the "right and ability to supervise" the violations, and that she had a "strong financial interest" in exploiting the copyrighted materials.[2]  See *J & J Sports Prods., Inc. v. Cervantes*, 2008 WL 583879, at * 3 (D. Colo. Jan. 30, 2008); *J & J Sports Prods., Inc. v. Benson*, 2007 WL 951872, *7 (E.D.N.Y. March 27, 2007); see also *J & J Sports Prods., Inc. v. Meyers*, 2007 WL 2030288, *3 (S.D.N.Y. July 16, 2007).

The Complaint alleges that Defendant Taylor "is an officer, director, shareholder, principal, manager and/or member" of Dawg House.  (Compl. ¶ 7.)  Plaintiff also pled on information and belief that Taylor "was the individual with supervisory capacity and control over the activities occurring within [Dawg House]" (*Id.* ¶ 11), that she "received a financial benefit from the operations of [Dawg House]" (*Id.* ¶ 12), and that she "was the individual with close control over the internal operating procedures and employment

---

[2]  The standard for vicarious liability based on a violation of 47 U.S.C. § 605 is the same standard imposed in copyright infringement cases.  *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, at *3 (S.D. Fla. Apr. 16, 2012).  Accordingly, a plaintiff is not required to plead facts sufficient to pierce the corporate veil.  *Id.*

practices of [Dawg House] on October 16, 2011" (*Id.* ¶ 13).

These allegations, inasmuch as they are deemed admitted as a result of Defendants' default, establish Defendant Taylor's individual liability.  See *Meyers*, 2007 WL 2030288, at *3 (S.D.N.Y. July 16, 2007); *see also Benson*, 2007 WL 951872, at *7 ("The complaint also alleges that, upon information and belief, Benson and Melvin were the individuals with supervisory capacity and control over activities occurring within the Establishment on December 3, 2005."); see also *Meyers*, 2007 WL 2030288, at *3 ("The complaint also alleges, upon information and belief, that Ms. Meyers had supervisory capacity and control over She Sha's activities on July 16, 2005, and received a financial benefit from those operations."); *J & J Sports Prods., Inc. v. Rodrigues*, 2007 WL 1726462, at *8 (E.D.N.Y. April 19, 2007) ("Plaintiff's complaint names both KACU and Juan Rodrigues as an officer, director, shareholder and/or principal of KACU, and as the person with 'supervisory capacity and control over the activities occurring within the establishment' on the night of the Event").  Defendant Taylor was the principal of Dawg House and had control over its activities on the day of the Broadcast, and received a financial benefit from those activities.  Accordingly, Defendant Taylor may be held jointly and severally liable along with Dawg House for violating the FCA.

## D.     Default Judgment for Sum Certain Damages

Plaintiff requests statutory damages in the amount of $10,000 pursuant to 17 U.S.C. § 605(e)(3)(C)(i)(II), and enhanced damages of $25,000-$100,000 pursuant to 17 U.S.C. § 605(e)(3)(C)(ii), in consideration of Defendants' allegedly willful violation for purposes of commercial advantage and financial gain.

1.     Statutory Damages

The FCA provides that the Court may award damages "for each violation of [Section 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]"  17 U.S.C. § 605(e)(3)(C)(i)(II).  The Court finds that the Defendants' showing of the Broadcast is one violation, because "most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation."  *Gutierrez*, 544 F. Supp. 2d at 1184.

"The amount of damages assessed pursuant to section 605 rests within the sound discretion of the court."  *Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997).  "[T]here needs to be some proportionality between the loss suffered and the amount of statutory damages."  *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001).  Additionally, Plaintiff has the burden to show than award of damages greater than the statutory minimum is warranted.  *See DIRECTV, Inc. v. Walsh*, 540 F. Supp. 2d 553, 560 (M.D. Pa. 2008).

Here, Plaintiff has not offered any evidence detailing the licensing fee or profit that it was deprived of.  (Compl. ¶ 44 ("DIRECTV cannot practicably determine the . . . lost revenues resulting from Defendants' unlawful conduct.").)  Therefore, the Court finds that Plaintiff has not met its burden of showing that an award of damages significantly greater than the statutory minimum is warranted.  *See Walsh*, 540 F. Supp. 2d at 560.  Accordingly, the Courts finds an award of damages of the amount of

$1,500.00 is appropriate and "just".[3]

    2.    <u>Enhanced Damages</u>

In addition to statutory damages, Plaintiff requests enhanced damages of up to $100,000 pursuant to Section 605(e)(3)(C)(ii), which states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [Section 605(a)].

Courts typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks. *Gutierrez*, 544 F. Supp. 2d at 1185 (citation omitted).

Here, Plaintiff has provided evidence showing that Defendants wilfully used the Broadcast, which they illegally accessed, for financial gain and that they advertised the Broadcast. (Compl. ¶ 15; ECF No. 12-1 at 13.) Although Plaintiff does not adduce any evidence indicating that Defendants had previously committed such a violation or charged inflated prices for food or drink during the Broadcast, the Court believes that an enhanced award is appropriate for the purpose of deterring any future violation. *See Gutierrez, 544 F. Supp. 2d at 1185.* While awarding the maximum amount of

---

[3] This award is also in line with awards granted for similar violations. *See DIRECTV, Inc. v. Cibulka*, 2011 WL 3273058 (M.D. Pa. July 29, 2011) (awarding $2,500 in statutory damages where defendant broadcast week three of NFL Sunday Ticket without payment of the requisite licensing fees to DIRECTV).

$100,000.00 in this case would be grossly excessive, the Court believes, based on the record in this case, than an enhanced award in the amount of $4,500 is appropriate. Such an award, treble the statutory damages, adequately addresses the willfulness of Defendants' illegal conduct. *See id.* (awarding enhanced damages that were treble the statutory damages); *Twiss*, 2012 WL 1059990, at * 7 (awarding enhanced damages that were slightly over treble the statutory damages).

    3.    <u>Attorney's Fees and Costs</u>

As the prevailing party under 47 U.S.C. § 605, Plaintiff is entitled to its reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). By affidavit, Plaintiff's counsel states that his attorney's fees total $2,811.40. (ECF No. 17-2 at 5.) Plaintiff also seeks costs of $1,005.00, for filing fees and service of process. (*Id.*) The Court finds these amounts reasonable, and awards them to Plaintiff

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. Plaintiff's Motion for Default Judgment is GRANTED;

2. The Clerk shall enter Judgment in favor of DIRECT TV and against Jessie Marie Taylor and Taylormade Foods LLC, d/b/a The Dawg House Saloon in the amount of $9,816.40, plus interest, consisting of:

    a.    Statutory damages in the amount of $1,500.00, plus interest, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

    b.    Enhanced damages in the amount of $4,500.00, plus interest, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

      c.      Attorney's fees and costs in the amount of $3,816.40, plus interest, pursuant to 47 U.S.C. § 605(e)(3)(B)(ii); and

3.      The Clerk of Court is directed to CLOSE this case.

Dated this 10th day of July, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge